J-A30045-17

2018 PA Super 278

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
CHARLES WAYNE POU :
:
Appellant : No. 95 WDA 2017

Appeal from the PCRA Order January 9, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002742-2013

BEFORE:  BOWES, J., STABILE, J., and FORD ELLIOTT, P.J.E.

OPINION BY BOWES, J.:                    FILED OCTOBER 11, 2018

Charles Wayne Pou appeals from the order denying his PCRA petition.

We affirm.

We previously set forth the facts and procedural history underlying

Appellant's conviction in our decision denying relief on direct appeal, which we

adopt herein:

> Following a jury trial, appellant was convicted of burglary,
> robbery, criminal conspiracy, four counts of recklessly
> endangering another person, possession of an instrument of
> crime, theft by unlawful taking, two counts of unlawful restraint,
> and four counts of terroristic threats.  The Commonwealth filed a
> notice of intent to seek the mandatory minimum sentence and
> appellant filed a pro se motion in objection.  On February 21,
> 2014, appellant began representing himself.  On April 2, 2014,
> due to appellant's prior conviction for a crime of violence, the court
> imposed three consecutive mandatory minimum sentences of 10
> to 20 years for appellant's convictions of robbery, conspiracy to
> commit robbery, and burglary.  These three sentences were to be
> served consecutively to the sentence appellant was serving at

> Docket Number 3261 of 1998. The court imposed no further penalty at the remaining counts.
>
> On April 7, 2014, appellant filed a pro se post-sentence motion to modify sentence and a pro se motion pursuant to Pa.R.Crim.P. 720 for a new trial. A supplemental post-sentence motion was filed on April 11, 2014, seeking an arrest of judgment and the dismissal of all charges. On April 14, 2014, appellant requested the appointment of counsel. On April 16, 2014, the trial court denied appellant's post-sentence motions. Thereafter, on April 24, 2014, appellant filed a pro se notice of appeal. On April 29, 2014, the trial court appointed counsel for purposes of appeal.

Commonwealth v. Pou, 2015 WL 6165190 at *1 (Pa.Super. 2015) (citations and footnote omitted; alterations in original). Appellant's appeal was denied, and he did not seek further review with our Supreme Court.

Appellant thereafter timely sought PCRA relief, which was denied without a hearing. On appeal Appellant raised one issue: "[Whether] direct appeal counsel was constitutionally deficient for failing to argue on appeal that the trial court erred in allowing appellant to waive his constitutional right to counsel where the court failed to conduct a full and complete oral waiver of counsel colloquy prior to granting appellant permission to proceed pro se[?]" Commonwealth v. Pou, 2016 WL 1436327 at *3 (Pa.Super. 2016) (unpublished memorandum). After review of the oral and written colloquies, we determined that they were not compliant with the waiver of counsel procedure set forth by Pa.R.Crim.P. 121, relinquished jurisdiction, and remanded for further proceedings:

> Here, the trial court conducted an oral colloquy in which Appellant indicated that he knew the nature and the elements of the charges against him, and that he was aware of the possible range of

> sentences and maximum possible penalties against him. However, the trial court did not advise Appellant of the specific statutory maximum sentences for his crimes in the oral or written colloquy. Further, the court did not inquire about his age, educational background or basic comprehension skills. Thus, the court failed to meet the minimum requirements of Rule 121.

Id. at *5 (emphasis added).[1]

We thus determined there was arguable merit to the claim, and remanded for an evidentiary hearing to determine whether counsel had a reasonable strategic basis for failing to raise that claim, and whether that failure prejudiced Appellant. Id. at *7. The PCRA court held the hearing as required, and determined that counsel had a reasonable basis for foregoing that claim. Appellant filed a notice of appeal and the trial court did not order a new Pa.R.A.P. 1925(b) statement. Appellant raises one issue for our review:

> Did the PCRA court err[ ] by not granting a new trial after this Court remanded for an evidentiary hearing to determine whether or not direct appeal counsel had a reasonable basis for failing to challenge the defective waiver of counsel colloquy that deprived Appellant of his right to counsel?

Appellant's brief at 3.

_____

[1] Pursuant to Pa.R.Crim.P. 121(A)(2), a trial judge is not permitted to permit a defendant to proceed pro se without first ensuring that the waiver of the right to counsel is knowing, voluntary, and intelligent. The Rule delineates certain topics that must be addressed, including, as relevant herein, whether "the defendant is aware of the permissible range of sentences and/or fines for the offenses charged[.]" Pa.R.Crim.P. 121(A)(2)(c).

Our task is to assess the remaining prongs of Appellant's ineffectiveness claim in light of the testimony produced at the evidentiary hearing. "Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." Commonwealth v. Spotz, 171 A.3d 675, 678 (Pa. 2017) (citing Commonwealth v. Washington, 927 A.2d 586, 593 (Pa. 2007)). In examining a claim of counsel ineffectiveness, we apply the following principles:

> It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

Commonwealth v. Smith, 181 A.3d 1168, 1174–75 (Pa.Super. 2018) (quoting Commonwealth v. Benner, 147 A.3d 915, 919–20 (Pa.Super. 2016)).

At the evidentiary hearing, direct appeal counsel Tina Fryling, Esquire, testified and explained that Appellant wrote a letter asking her to raise some issues, which did not mention the validity of the waiver of counsel colloquy. N.T., 12/6/16, at 6. With respect to her independent review of the case, Attorney Fryling stated that the colloquy "was thorough. It went through the

- 4 -

entire checklist that the District Attorney's office uses in every case. And [Appellant] seemed intelligent and as though he wanted to represent himself at trial." Id. at 10. Counsel was asked, "And did the colloquy conform with the Rule 121 as you understood it?" She replied, "I believe that it did." Id. at 11. Later, the following exchange occurred:

> Q. Your reason for – is it fair to say your reason for not including the ineffective – or I'm sorry, the ineffective waiver of counsel as an appellate issue because you didn't believe that was an actual issue to appeal?
>
> A. That is correct.
>
> Q. But if you – in researching that issue it had come to light that was a potential issue that would have won on appeal, would you have put that in your appeal?

Id. at 15.

The Commonwealth objected before the answer, and the PCRA court sustained the objection. The PCRA court's order explained its conclusion that Attorney Fryling had a reasonable strategic basis for declining to pursue the defective colloquy issue on the grounds that nothing in the record indicated that Appellant was unaware of the specific statutory maximums for the charged crimes.

> Attorney Fryling thoroughly reviewed the entire transcript, pre-trial motions, correspondence, pre-sentence report and all other matters pertinent to the Defendant's case. She would have been aware of his age, background and level of comprehension from the criminal complaint, pre-sentence report, correspondence with the Defendant and to prior counsel, his pro se motions and interaction with the Court.

> There is nothing in the record Attorney Fryling reviewed to indicate the Defendant did not understand, or could not comprehend the matters contained in the colloquy with the Court. And at no time has or did the Defendant ever indicate or communicate to Attorney Fryling that he did not know the statutory penalties for his crimes or that had he known them he would not have chosen to represent himself. Nor has the Defendant ever set forth that he did not understand or comprehend the nature of his waiver of counsel.
>
> Under oath the Defendant orally and in writing stated that he knew the possible maximum sentences for the crimes with which he was charged. He should not now be rewarded with a new trial for lying to the Commonwealth and the Court, and, pursuant to PCRA law, Attorney Fryling clearly acted reasonably under all of the circumstances in not raising this issue and the Defendant has not proven otherwise.

Order, 1/9/17, at 1-2 (emphasis in original).

We conclude that the order must be affirmed, but we disagree with the PCRA court's conclusion that appellate counsel had a reasonable strategic basis for failing to raise the claim that Appellant's waiver of counsel colloquy was deficient. Instead, we find that Appellant did not establish prejudice pursuant to Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987), a conclusion that is strengthened in light of Weaver v. Massachusetts, 137 S.Ct. 1899 (2017), as explained at length infra.[2] We therefore affirm on that alternative basis. "[W]e may affirm the decision of the PCRA court if there is any basis on the record . . . this is so even if we rely on a different basis in our decision to affirm." Commonwealth v. Wiley, 966 A.2d 1153, 1157

_____

[2] Pennsylvania uses the Pierce framework, but we apply federal precedent to the prejudice inquiry. Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999).

(Pa.Super. 2009) (quoting Commonwealth v. Blackwell, 936 A.2d 497, 499 (Pa.Super. 2007)).

In our prior memorandum, we did not explicitly address Pierce prejudice; instead, we noted our belief that, if counsel had presented the deficient colloquy claim on direct appeal, Appellant would have received a new trial:

> Here, if direct appeal counsel had raised the issue of the trial court's error of failing to conduct a complete oral colloquy before allowing Appellant to represent himself, this Court would have vacated his judgment of sentence and allowed him to proceed to a new trial with counsel or with a proper colloquy.

Pou, 2016 WL 1436327 at *6 (emphases added).

Accordingly, our prior decision opined that Appellant would have received a new trial regardless of whether he actually lacked understanding of the statutory maximums; the fact that the colloquy was defective on that score was sufficient. The failure to raise that claim was doubtlessly prejudicial, but as we shall explain it does not rise to the level of Pierce prejudice.

We now examine the PCRA court's conclusion that counsel had a reasonable strategic basis for foregoing the colloquy claim. That facet of the ineffectiveness test is designed to insulate reasonable strategic decisions from post-trial hindsight.

> The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even

willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

Strickland v. Washington, 466 U.S. 668, 690 (1984).

As it pertains to appellate counsel's strategic decisions, counsel is permitted to winnow out weaker claims in favor of pursuing claims that counsel believes offer a better chance of relief. That legal principle is effectively an embodiment of the oft-quoted observation by the Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit:

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them . . . [and] it is [this] presumption . . . that reduces the effectiveness of appellate advocacy.

Commonwealth v. Robinson, 864 A.2d 460, 480, n.28 (Pa. 2004) (quoting Aldisert, "The Appellate Bar: Professional Competence and Professional Responsibility—A View From the Jaundiced Eye of the Appellate Judge," 11 Cap. U.L. Rev. 445, 458 (1982) (emphasis and alterations in original)). As

our Supreme Court has stated, this means counsel can forego even arguably meritorious claims:

> It is true that arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief. Appellate counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.

Commonwealth v. Williams, 141 A.3d 440, 471 (Pa. 2016) (cleaned up).

However, the caveat to that point is that the strategic choices must be informed. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, supra at 690-91. Thus, failing to raise a claim due to misapprehension of the law applicable to that claim cannot be considered a strategic choice.

Presently, we find that the PCRA court failed to adequately address the fact that the law would have afforded relief. By focusing on whether counsel could reasonably conclude that Appellant actually understood the maximum penalties, the PCRA court misapplied the reasonable strategic basis test.[3] The

_____

[3] For instance, suppose that a defendant gives a confession to a crime, which trial counsel fails to move to suppress. A review of the record demonstrates that a motion to suppress under Miranda v. Arizona, 384 U.S. 436 (1966),

law applicable to Rule 121 challenges would not have required that showing on direct appeal, and the evidentiary hearing demonstrates that counsel was unaware of that point. Counsel testified that she believed that the colloquy was valid, which, as our prior memorandum explained, was an incorrect conclusion. Therefore, when appellate counsel declined to pursue that claim, that choice was not a reasonable strategic decision since it was not adequately informed.

In Commonwealth v. Hickman, 799 A.2d 136 (Pa.Super. 2002), this Court determined that counsel ineffectively advised a defendant to accept a plea in exchange for a term of years sentence. Counsel informed the defendant that he would be eligible for parole after two years pursuant to the State Motivational Boot Camp program, 61 P.S. §§ 1121–1129. That advice was objectively incorrect since Hickman was statutorily ineligible for that program. "[B]ased on an ignorance of relevant sentencing law, counsel's advice was legally unsound and devoid of any reasonable basis designed to effectuate Appellant's interests." Id. at 141. The same point applies herein.

_____

clearly would have succeeded. The record also reveals that the defendant is a former police officer and knew the Miranda warnings by heart.

We do not think that this Court would hold that trial counsel could reasonably conclude that seeking suppression of the confession was unnecessary since the defendant subjectively knew his Miranda rights. We think that, for purposes of reasonable strategic basis analysis, the viability of the motion to suppress would be the relevant focus.

Appellate counsel believed that the colloquy was valid, but that conclusion was based on ignorance of the applicable precedents.[4]

We nevertheless affirm the denial of PCRA relief, as we conclude that Appellant did not establish prejudice under the standard articulated by Pierce. There is no doubt that Appellant was prejudiced by appellate counsel's failure in that he would have received a new trial on direct appeal. Yet the rationale for granting relief on direct appeal without any showing of prejudice does not necessarily warrant the same result in the PCRA context.

In Weaver, supra, the United States Supreme Court established that the ineffective failure to raise a claim of structural error on direct appeal, which would result in a new trial without any showing of prejudice, does not necessarily warrant the same result on collateral review. That same logic perforce applies to claims, such as this one, that are not structural errors. With respect to structural errors, Weaver explained how a court should apply the prejudice prong analysis on collateral review:

> During petitioner's trial on state criminal charges, the courtroom was occupied by potential jurors and closed to the public for two days of the jury selection process. Defense counsel neither

---

[4] Moreover, the issues direct appeal counsel pursued were clearly weaker than the defective colloquy claim. "[W]e will conclude that counsel's chosen strategy lacked a reasonable basis only if the petitioner proves that the alternative strategy not selected offered a potential for success substantially greater than the course actually pursued." Commonwealth v. Busanet, 54 A.3d 35, 46 (Pa. 2012) (citation omitted). To the extent that the reasonable strategic basis prong would permit counsel to forego even a winning claim, the claims advanced in the alternative would have to be as likely to succeed.

objected to the closure at trial nor raised the issue on direct review. And the case comes to the Court on the assumption that, in failing to object, defense counsel provided ineffective assistance.

In the direct review context, the underlying constitutional violation—the courtroom closure—has been treated by this Court as a structural error, i.e., an error entitling the defendant to automatic reversal without any inquiry into prejudice. The question is whether invalidation of the conviction is required here as well, or if the prejudice inquiry is altered when the structural error is raised in the context of an ineffective-assistance-of-counsel claim.

Id. at 1905.

The High Court ultimately concluded that Weaver was not entitled to a new trial on collateral review, even though he would have received that relief if the same structural error claim had been raised on direct review. With respect to the prejudice prong, the Court stated:

The question then becomes what showing is necessary when the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance-of-counsel claim. To obtain relief on the basis of ineffective assistance of counsel, the defendant as a general rule bears the burden to meet two standards. First, the defendant must show deficient performance—that the attorney's error was so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the attorney's error prejudiced the defense.

. . . .

That said, the concept of prejudice is defined in different ways depending on the context in which it appears. In the ordinary Strickland case, prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. But the Strickland Court cautioned that the prejudice inquiry is not meant to be applied in a mechanical fashion. For when a court is evaluating an

- 12 -

> ineffective-assistance claim, the ultimate inquiry must concentrate on the fundamental fairness of the proceeding. Petitioner therefore argues that under a proper interpretation of Strickland, even if there is no showing of a reasonable probability of a different outcome, relief still must be granted if the convicted person shows that attorney errors rendered the trial fundamentally unfair. For the analytical purposes of this case, the Court will assume that petitioner's interpretation of Strickland is the correct one. In light of the Court's ultimate holding, however, the Court need not decide that question here.
>
> As explained above, not every public-trial violation will in fact lead to a fundamentally unfair trial. Nor can it be said that the failure to object to a public-trial violation always deprives the defendant of a reasonable probability of a different outcome. Thus, when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, Strickland prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.

Id. at 1911 (emphasis added, cleaned up).

Weaver rejects the notion that the prejudice inquiry on collateral review is simply whether Appellant would have received relief on direct appeal. Instead, he must show prejudice in the Strickland sense. Weaver applied the "reasonable probability of a different outcome" test to the trial proceedings, not the direct appeal proceeding, as follows:

> Although the case comes on the assumption that petitioner has shown deficient performance by counsel, he has not shown prejudice in the ordinary sense, i.e., a reasonable probability that the jury would not have convicted him if his attorney had objected to the closure.
>
> It is of course possible that potential jurors might have behaved differently if petitioner's family had been present. And it is true that the presence of the public might have had some bearing on

juror reaction. But here petitioner offered no "evidence or legal argument establishing prejudice" in the sense of a reasonable probability of a different outcome but for counsel's failure to object.

Id. at 1912–13.

We now apply Strickland prejudice as contemplated by Weaver and our precedents. Appellant was not required to establish a reasonable probability that the outcome of the trial would have been different had he been represented by counsel, for that test is impossible to apply.[5] Moreover, asking whether an attorney would have made a difference assumes that the waiver of counsel was invalid. If Appellant's waiver of counsel were constitutionally deficient, as opposed to technically deficient under the Rule, we would agree that the error would be structural as set forth by Weaver. For the following reasons, we hold that for the discrete claim of ineffective assistance of appellate counsel for failing to challenge a defective Rule 121 colloquy, the prejudice showing on collateral review requires a showing that the waiver of counsel was constitutionally deficient.

---

[5] Weaver explained that there are multiple rationales for deeming a particular error structural. As applicable herein, one rationale was that some errors "always [result] in fundamental unfairness. For example, if an indigent defendant is denied an attorney[.]" Weaver, supra at 1908. A constitutionally invalid waiver of the right to counsel would effectively result in the denial of counsel, and it "would be futile for the government to try to show harmlessness," id., on direct appeal. Thus, a constitutionally invalid waiver of counsel would qualify as a structural error.

In Commonwealth v. Spotz, 18 A.3d 244 (Pa. 2011), our Supreme Court reviewed the denial of a PCRA petition raising, inter alia, a claim that his "waiver of the right to counsel was not voluntary, knowing, or intelligent . . . and that [trial counsel] was ineffective for failing to object to the trial court's allegedly inadequate colloquy[.]" Id. at 262. Our High Court noted that the claim the waiver was not "voluntary, knowing, or intelligent" implicated the constitutional standard of the waiver of the right to counsel, as set forth in Faretta v. California, 422 U.S. 806 (1975). Spotz also noted that the Rules of Criminal Procedure directed the trial court to explore specific areas of inquiry. Significantly, Spotz observed that "Although our rules set forth specific requirements for a waiver colloquy, we have been careful to distinguish between a colloquy and the right that it was designed to protect[.]" Id. at 263. Thus:

> [W]hen a petitioner claims ineffective assistance of counsel based on a failure to object to an allegedly defective waiver colloquy, the claim must be analyzed like any other ineffectiveness claim. The petitioner cannot prevail merely by establishing that the waiver colloquy was indeed defective in some way. Rather, the petitioner must prove that, because of counsel's ineffectiveness, he waived the constitutional right at issue unknowingly or involuntarily, and that he was prejudiced. To establish prejudice, the petitioner must demonstrate a reasonable probability that but for counsel's ineffectiveness, he would not have waived the right at issue.

Id. at 263–64 (citation omitted).

Presently, we are not dealing with the claim that trial counsel was ineffective for failing to object during the colloquy proceeding, as in Spotz, but rather that direct appeal counsel was ineffective for failing to challenge

the defective colloquy. Nonetheless, Spotz clearly disavows the per se prejudice approach alluded to in our prior memorandum. The fact that the colloquy may have been technically defective does not warrant a new trial.

As in Spotz, the key issue in this case is that the defective waiver of counsel based on failure to comply with Rule 121 is not equivalent to a finding that the waiver was constitutionally unsound. Indeed, the fact that Weaver holds that ineffective failures to raise structural error claims does not automatically entitle a defendant to relief on collateral review a fortiori means that lesser errors, such as the colloquy issue herein, do not warrant automatic relief.

To buttress our conclusion that Appellant must show a constitutionally defective colloquy, we now briefly address the law surrounding review of waiver of counsel colloquies on direct appeal. The applicable principles were discussed by our Supreme Court as follows:

> Before a defendant is permitted to proceed pro se, however, the defendant must first demonstrate that he knowingly, voluntarily and intelligently waives his constitutional right to the assistance of counsel. If the trial court finds after a probing colloquy that the defendant's putative waiver was not knowingly, voluntarily or intelligently given, it may deny the defendant's right to proceed pro se. The "probing colloquy" standard requires Pennsylvania trial courts to make a searching and formal inquiry into the questions of (1) whether the defendant is aware of his right to counsel or not and (2) whether the defendant is aware of the consequences of waiving that right or not. See also Pa.R.Crim.P. 318(c) (when the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether the waiver was made knowingly, voluntarily and intelligently). Specifically, the court must inquire whether or not: (1) the defendant understands that

> he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent; (2) the defendant understands the nature of the charges against him and the elements of each of those charges; (3) the defendant is aware of the permissible range of sentences and/or fines for the offenses charged; (4) the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules; (5) defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and (6) the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.

Commonwealth v. Starr, 664 A.2d 1326, 1335 (Pa. 1995) (some citations omitted).

Starr described the "probing colloquy" standard that Pennsylvania trial courts must make with reference to Rule of Criminal Procedure 318 (now codified at Rule 121). Starr did not hold that the Rule sets forth the constitutional standard for waiving the right to counsel. In fact, Starr recognized that "a waiver of the right to counsel may be considered 'knowing and intelligent' based simply on a finding that the defendant in fact understands both the significance and consequences of the decision to waive counsel." Id. at 1336 (quotation marks and citations omitted). Starr cited, inter alia, Faretta, supra, wherein the United States Supreme Court established that a defendant has the constitutional right to represent himself, and observed the following with respect to waiver of the right to counsel:

- 17 -

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id.* at 835 (citations omitted).

Thus, Rule 121 goes farther than what the United States Constitution requires. Accordingly, a technically-deficient waiver of counsel colloquy is not the same as a constitutionally deficient waiver of counsel. *See e.g. Lopez v. Thompson*, 202 F.3d 1110, 1117 (9th Cir. 2000) ("Neither the Constitution nor *Faretta* compels the district court to engage in a specific colloquy with the defendant.").

Herein, Appellant does not claim that the waiver of counsel fell short of what is contemplated by *Faretta*. His only complaint is that the waiver of counsel colloquy was defective pursuant to the Rule. That distinction is crucial, and warrants the denial of a new trial on collateral review despite the fact that the exact same claim would have resulted in a new trial on direct appeal without that showing.

For the sake of completeness, we note that our review of the record establishes that the waiver of counsel was not constitutionally deficient. Our prior decision quoted the oral colloquy, which reveals, inter alia, that Appellant: was informed he would be required to follow all rules of procedure

and evidence; his appointed counsel would be more familiar with those matters; there may be defenses that the attorney would be aware of; and his failure to object at the appropriate times would result in waiver. The court also confirmed that no one influenced him to make that decision. Indeed, the record shows that Appellant, who had been represented by counsel and filed premature allegations of ineffective assistance of counsel, was simply dissatisfied with his attorney and wished to represent himself for that reason. In fact, he explained that his unhappiness prompted his waiver:

> [APPELLANT]: Well, you know, just to make sure it's on the record, the reason I want to represent myself and not go with an attorney—with this particular attorney, Mr. Celland (sic) is, you know, he hasn't—he spoke to me one time and never even talk—spoke to me about a defense in my case, you know. He never even—he never done any of that, you know. He didn't do what I asked him to do at the preliminary hearing which was, you know, ask for a pre-trial, pre-hearing lineup. I was never identified by the victim. He came—
>
> THE COURT: We're not going to go into the primary [sic] hearing.
>
> [APPELLANT]: Oh, okay. Well, that's the reason why I want to represent myself, because I believe in my heart that I could do a better job myself.

Pou, 2016 WL 1436327 at *2-3 (quoting transcript).

Appellant was "made aware of the dangers and disadvantages of self-representation," and our review of the colloquy establishes that he knew what he was doing and "his choice [was] made with eyes wide open." Faretta, supra at 835. Additionally, Appellant acknowledged that he was in fact aware of the maximum penalties:

[PROSECUTOR]: Do you know the nature—I'm going to mark down yes. Are you aware of the possible range of sentences, including fines and the maximum possible penalty that can be imposed if you're found guilty or plead guilty?

[APPELLANT]: Yes.

Id. at *2 (quoting transcript).

We recognize that the colloquy exists to make sure that the defendant's understanding is actually correct and is prophylactic in nature.[6] However, assuming arguendo that a constitutionally valid waiver of counsel required explicit knowledge of the maximum penalties, Appellant informed the trial court he was aware of those penalties. If Appellant was unsure or needed more information, all he had to do was say so. Relatedly, we deem significant Weaver's explanation for why it is permissible to have different results at different stages of the appellate process:

> [W]hen state or federal courts adjudicate errors objected to during trial and then raised on direct review, the systemic costs of remedying the error are diminished to some extent. That is because, if a new trial is ordered on direct review, there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost. There are also advantages of direct judicial supervision. Reviewing courts, in the regular course of the appellate process, can give instruction to the trial courts in a familiar context that allows for elaboration of the relevant principles based on review

---

[6] For this reason, we disagree with the PCRA court's conclusion that Appellant lied when he stated that he knew the applicable statutory maximums. A defendant who mistakenly believes that the maximum penalty for a felony of the third degree is two years would answer "yes" when asked if he knew the maximum penalty for that crime. That answer would be incorrect, not untruthful. The PCRA court failed to consider the possibility that Appellant believed he was aware of the maximums.

of an adequate record. For instance, in this case, the factors and circumstances that might justify a temporary closure are best considered in the regular appellate process and not in the context of a later proceeding, with its added time delays.

Weaver, supra at 1912.

Whatever may be said of the wisdom of a bright-line rule granting relief for technical violations of Rule 121 on direct appeal, but see Commonwealth v. Brazil, 701 A.2d 216, 219 (Pa. 1997) (Castille, J., dissenting) (opining that a totality of the circumstances test should apply to determine whether a waiver of counsel was valid), the prophylactic purpose of ensuring strict compliance with Rule 121 dissipates to a great degree on collateral review. At this point in time, finality considerations justify applying a higher standard of prejudice than what would have applied on direct review. Of note, when addressing this type of claim on direct appeal, it is the Commonwealth's burden to establish that the waiver of counsel was valid. In collateral proceedings, however, it is the petitioner who bears the burden to establish that he was prejudiced. Therefore, Appellant must show something more than a technical defect, i.e., a constitutionally defective waiver of his right to counsel. Since he has failed to do so, we find that Appellant failed to establish prejudice and therefore affirm the order on that alternative basis.

Order affirmed.

Judge Stabile joins the opinion.

President Judge Emeritus Ford Elliott files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/11/2018