J-S27021-24

2024 PA Super 299

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE E. HERNANDEZ | : | |
| | : | |
| Appellant | : | No. 1785 EDA 2023 |

Appeal from the PCRA Order Entered July 5, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0603151-1988

BEFORE:   LAZARUS, P.J., NICHOLS, J., and COLINS, J.[*]

OPINION BY NICHOLS, J.:                           **FILED DECEMBER 16, 2024**

Appellant Jose E. Hernandez appeals from the order dismissing his Post Conviction Relief Act[1] (PCRA) petition.  Appellant argues that his sentence was illegal and violates Article I, Section 13 of the Pennsylvania Constitution.  We affirm.

A prior panel of this court summarized the relevant facts of this case as follows:

> Appellant's[FN1] next door neighbor, Jerome Moses, testified that on March 14, 1988, he heard loud scuffling noises between 4:00 and 6:00 a.m. in the Hernandez apartment.  As these noises continued, he heard Carmen Hernandez, Appellant's stepmother, say three times, "I love you."  He then heard three or four popping noises that sounded like a cap gun.  Subsequently, Mr. Moses did not hear any more voices, but he did hear dragging sounds and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

noises resembling objects being replaced. He then heard somebody leave the apartment. When he looked out of the window, he saw one man get into the Hernandez family van. Mr. Moses originally thought that the man was Appellant's father, since the individual was wearing [Appellant's father's] jacket and since only the father drove the van. Once he learned that the father was dead, the witness then concluded that the man must have been Appellant.

[FN1] Appellant was 17 years old at the time of this incident.

During the next week, friends, neighbors, and relatives became concerned about the Hernandez family since they had not been seen and since both of their vehicles were not in their normal parking places. Telephone calls to the apartment were not answered. Meanwhile, Appellant decided to stay at his girlfriend's house, and he told her mother that he was alone since his family suddenly left without telling him or taking him with them. However, the family had not told anyone about these travel plans. Appellant attended school regularly during the week, took his girlfriend on a shopping spree, and moved a VCR and other valuable items out of his family's apartment and into his girlfriend's house. His girlfriend commented on numerous deep scratches on Appellant's chest[,] which he explained had been inflicted during a recent robbery.

Eventually, Appellant was questioned in school by his parent[s'] friends and relatives concerning his family's whereabouts. He escorted them back to the apartment and allowed them to enter. When asked about blood stains on the sofa, Appellant replied that the stains were Carmen's blood. When questioned about why the bathroom door was locked, the fan on, and a towel under the door, he had no explanation. Appellant fled when the bathroom door was broken down and the bodies of his father, stepmother, and two younger brothers were found in the bathtub. The bodies were encased in plastic bags and covered with towels. It was determined that both parents had been shot in the back of the head, one brother had been asphyxiated with a plastic bag over his head, and another brother had his skull crushed.

Appellant fled Pennsylvania in his father's Honda. He reached Florida[,] and [he] then headed . . . through Tennessee. Tennessee State Troopers Richard Austin and Joel Deal observed Appellant's Honda parked in a rest stop. Several hours later, the officers observed Appellant's Honda parked in the same place at

the rest stop. Trooper Austin watched Appellant get out of his automobile, stretch, and put on a long coat. Since the weather was warm, Trooper Austin became suspicious. He ran a computer check on Appellant's license plate number which revealed that Appellant was wanted in Pennsylvania in connection with multiple homicides, that the occupant of the Honda matched the description of the suspect, and that Appellant was presumed armed and dangerous. The troopers returned to the rest stop, surprised Appellant in the restaurant, and arrested him.

The troopers then asked for Appellant's license and identification. Police retrieved these items after Appellant indicated that they were in his wallet in his back pocket. When the troopers requested the keys to the Honda, Appellant indicated they were in his coat pocket. Trooper Deal reached in and took the keys and handed them to Trooper Austin. Trooper Austin inspected the car, unlocked it, and retrieved a letter sitting on the car seat in plain view. The letter was written by Appellant, and in it, he informed his girlfriend that he had killed his family, was proud of it, and felt better. The troopers then locked the car, made arrangements to have it towed, read Appellant his ***Miranda***[FN2] rights, and transported him to the nearest police station.

  [FN2] ***Miranda v. Arizona***, 384 U.S. 436, (1966).

At trial, Appellant alleged that he killed his father in self-defense and that his father continually abused him. He claimed his father was angry that Appellant's stepmother again became pregnant and that his father frequently threatened to leave her or to kill the whole family. In fact, Appellant alleged that his father was jealous and suspected him of impregnating his stepmother. Appellant produced witnesses who substantiated that his father beat him, was having marital discord, and had been seen by one of them threatening Appellant by putting a gun to his head. Appellant's specific defense to the charges of first[-]degree murder was that his father had returned home in a drunken rage and forced Appellant to kill the others. His father then made him clean the apartment. Later, in the car, his father again threatened him, but Appellant was able to shoot his father. Appellant argued that the evidence supported this version of events since the blood-stained seats in the car matched only his father's blood type. The Commonwealth refuted this evidence by proving that the barrel of the murder weapon contained only the blood type[,] which matched his stepmother, but not his father. Thus, Appellant's

- 3 -

stepmother[,] rather than his father[,] was the last one to be shot with that gun.

\* \* \*

On January 25, 1990, after a jury trial before the Honorable Eugene H. Clarke, a jury convicted [Appellant] of four counts of First-Degree Murder and [PIC]. On that same date, [the trial court] sentenced [Appellant] to two consecutive and two concurrent terms of life imprisonment without the possibility of parole for the First-Degree Murder convictions, and a concurrent sentence of two and one-half to five years of imprisonment for PIC.

On June 25, 2012, the Supreme Court of the United States issued its holding in **Miller v. Alabama**, 567 U.S. 460 (2012), which rendered all mandatory life imprisonment without parole sentences for juveniles unconstitutional. On January 27, 2016, the Supreme Court of the United States issued its holding in **Montgomery v. Louisiana**, 577 U.S. 190 (2016), which held that the **Miller** decision applied retroactively.

\* \* \*

[Appellant filed a PCRA petition on February 29, 2016.] On June 27, 2018, the [PCRA court] granted [Appellant] post-conviction relief and vacated his January 25, 1990 sentence. On that same date [the trial court] imposed concurrent forty-five years to life sentences on each count of first-degree murder, and no further penalty on PIC. [Appellant] did not file a post-sentence motion.

**Commonwealth v. Hernandez**, 217 A.3d 873, 874–77 (Pa. Super. 2019) (formatting altered and some citations omitted).

After Appellant was resentenced on June 27, 2018, he filed a direct appeal in which he argued, among other things, that forty-five years to life was a *de facto* life sentence. **See id.** at 877. This Court subsequently affirmed Appellant's judgment of sentence, and our Supreme Court denied further

review.  *See id.* at 880; *see also Commonwealth v. Hernandez*, 279 A.3d 36 (Pa. 2022).

Appellant filed a timely counseled PCRA petition arguing that the concurrent sentences of forty-five years to life constitute a constitutionally defective *de facto* life sentence in violation of Article I, Section 13 of the Pennsylvania Constitution prohibiting cruel punishments.  **See** PCRA Pet., 5/12/23, at 3-8.

On May 19, 2023, the PCRA court filed a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing.  Appellant subsequently filed a response in which he reiterated his argument that the sentence was an unconstitutional *de facto* life sentence in violation of Article I, Section 13 of the Pennsylvania Constitution.  **See** Appellant's Response, 6/8/23, at 2-12.

On June 22, 2023, the PCRA court filed an order and an opinion in support of its order dismissing Appellant's PCRA petition, and on July 5, 2023, the PCRA court filed a formal order dismissing Appellant's PCRA petition. Appellant filed a timely appeal and a court-ordered Pa.R.A.P. 1925(b) statement.  The PCRA court subsequently filed a supplemental opinion addressing Appellant's claims.

On appeal, Appellant presents the following issues:

1. Are four concurrent 45 years to life sentences a *de facto* life sentence requiring proof, absent here, that the juvenile was permanently incorrigible, irreparably corrupt, or irretrievably depraved?

- 5 -

2. Because the four concurrent 45 years to life sentences were *de facto* life sentences, should not this Court remand for resentencing?

Appellant's Brief at 3 (some formatting altered).

Appellant's issues are interrelated, and we address them together. As stated previously, Appellant argues that Article I, Section 13 of the Pennsylvania Constitution is broader than that Eighth Amendment to the U.S. Constitution. Appellant's Brief at 8-23. Appellant further contends that his sentence is an illegal *de facto* life sentence, which violates the Pennsylvania Constitution and is subject to correction. *See id.* at 23-25.[2]

In reviewing an order denying a PCRA petition, our standard of review is well settled:

> [O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

---

[2] Although Appellant does not state that his sentence was "cruel" and specifically address Article I, Section 13 of the Pennsylvania Constitution in his statement of questions presented, this argument was raised in his Pa.R.A.P. 1925(b) statement and included in the argument section of his brief. *See* Pa.R.A.P. 1925(b) Statement, 8/3/23, at 2-5; Appellant's Brief at 7-25. Although we do not condone Appellant's failure to specify the issue in the statement of questions presented in violation of Pa.R.A.P. 2116(a), we conclude that it does not preclude appellate review, and we decline to quash the appeal. *See Commonwealth v. Lyons*, 833 A.2d 245, 252 (Pa. Super. 2003) (providing that this Court may quash or dismiss an appeal if an appellant fails to conform with the requirements set forth in the Pennsylvania Rules of Appellate Procedure).

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and formatting altered).

A claim that the sentencing court imposed an unconstitutional and *de facto* life sentence in violation of *Miller* constitutes a challenge to the legality of the sentence. *Commonwealth v. Harper*, 273 A.3d 1089, 1093 (Pa. Super. 2022) (citing *Commonwealth v. Clary*, 226 A.3d 571, 580 (Pa. Super. 2020)).

> A challenge to the legality of sentence is an attack upon the power of a court to impose a given sentence. Legality of sentence issues occur generally either (1) when a trial court's traditional authority to use discretion in the act of sentencing is somehow affected; and/or (2) when the sentence imposed is patently inconsistent with the sentencing parameters set forth by the General Assembly. The question of whether a claim implicates the legality of a sentence presents a pure question of law. Issues relating to the legality of a sentence are reviewed de novo, and our scope of review is plenary.

*Id.* (citations omitted). A challenge to the legality of a sentence is cognizable claim under the PCRA. *See Commonwealth v. McIntyre*, 232 A.3d 609, 617 (Pa. 2020). "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Pope*, 216 A.3d 299, 303 (Pa. Super. 2019) (citation omitted).

Appellant argues that his sentence violates Article I, Section 13 of the Pennsylvania Constitution.[3] Appellant contends that Article I, Section 13 of

_____

[3] The PCRA court concludes that Appellant challenges only the discretionary aspects of his sentence and that Appellant's issue was presented in Appellant's
*(Footnote Continued Next Page)*

- 7 -

the Pennsylvania Constitution[4] provides broader protections than the Eighth

Amendment to the U.S. Constitution.[5]  Appellant's Brief at 9.  Appellant also

asserts that Pennsylvania is not bound by decisions from the United States

_____

brief on direct appeal.  **See** PCRA Ct. Op., 6/22/23, at 4-5.  As such, the PCRA court contends that Appellant's challenge to the discretionary aspect of his sentence is not cognizable under the PCRA.  **See id.** We agree that challenges to the discretionary aspects of sentencing are not cognizable under the PCRA.  **See Commonwealth v. Wrecks**, 934 A.2d 1287, 1289 (Pa. Super. 2007) (explaining that requests for relief with respect to discretionary aspects of sentence are not cognizable in PCRA proceedings).  In order to be cognizable under the PCRA, a challenge to the discretionary aspects of a sentence must be presented in the context of a claim of ineffective assistance of counsel.  **See Commonwealth v. Sarvey**, 199 A.3d 436, 455 (Pa. Super. 2018).  Here, Appellant has not presented or argued a claim of ineffectiveness.  Therefore, to the extent that Appellant purports to challenge the discretionary aspects of his sentence, we conclude that such a challenge is not cognizable.  **See Wrecks**, 934 A.2d at 1289.  Further, the PCRA court states that Appellant is not eligible for relief because his issue on appeal was either previously litigated or waived.  **See** PCRA Ct. Op., 6/22/23, at 5-6.  Although Appellant may have stated a challenge to his sentence under Article I, Section 13 of the Pennsylvania Constitution in his brief on direct appeal, it was not specifically addressed by this Court in our disposition.  Therefore, we decline to find Appellant's current challenge to the legality of his sentence under Article I, Section 13 was previously litigated.  Moreover, because Appellant challenges the legality of his sentence, we conclude the issue is not waived.  **See Harper**, 273 A.3d at 1093; **Commonwealth v. Dickson**, 918 A.2d 95, 99 (Pa. 2007) (stating that "a challenge to the legality of [a] sentence cannot be waived."). Further, we note that "[w]e may affirm the decision of the PCRA court if there is any basis on the record . . . this is so even if we rely on a different basis in our decision to affirm."  **Commonwealth v. Pou**, 201 A.3d 735, 740 (Pa. Super. 2018).

[4] Article I, Section 13 of the Pennsylvania Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."  PA CONST Art. 1, § 13.

[5] The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST Amend. VIII.

Supreme Court interpreting similar but distinct federal constitutional provisions. Appellant's Brief at 7 (citing **Commonwealth v. Edmunds**, 586 A.2d 887, 894 (Pa. 1991)).

When challenging the rights that the Pennsylvania Constitution affords, litigants must address the: "1) text of the Pennsylvania constitutional provision; 2) history of the provision, including Pennsylvania case-law; 3) related case-law from other states; [and] 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence." **Edmunds**, 586 A.2d at 895.

In his brief, Appellant addresses the **Edmunds** factors. Appellant notes that the Eighth Amendment precludes "cruel and unusual" punishments, while Article I, Section 13 of the Pennsylvania Constitution precludes only "cruel" punishment. Appellant's Brief at 7-10. Appellant next addresses the history of the state and federal prohibitions and explains that "the Federal Bill of Rights borrowed heavily from the Declaration of Rights of Pennsylvania and other colonies." **Id.** at 10 (internal quotation marks and citation omitted). Appellant reiterates the distinction between "cruel" and "cruel and unusual" punishments. **See id.** at 10-13. Appellant also cites case law from other states interpreting state constitutions more broadly than the U.S. Constitution. **See id.** at 14-18. Appellant then contends that Pennsylvania has a long history of protecting children and youthful offenders. **See id.** at 18-23.

In **Commonwealth v. Elia**, 83 A.3d 254, 267 (Pa. Super. 2013), this Court addressed an appellant's argument that Article I, Section 13 of the Pennsylvania Constitution should be interpreted more broadly than the Eighth Amendment. In that case, the appellant provided a comprehensive analysis pursuant to **Edmunds**, and argued "adamantly that Article 1, Section 13 of the Pennsylvania Constitution provides broader protection against cruel punishments than the Eighth Amendment to the United States Constitution." **Elia**, 83 A.3d at 267.

> In addressing this issue, the **Elia** Court stated:
>
> While we appreciate [the appellant's] zealous advocacy, we decline his invitation to construe our Constitution differently than the United States Supreme Court has interpreted the Eighth Amendment to the United States Constitution. Indeed, Pennsylvania courts have repeatedly and unanimously held that **"[t]he Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendments [to] the United States Constitution," and that "the Pennsylvania Constitution affords no broader protection against excessive sentences than that provided by the Eighth Amendment to the United States Constitution."** [**Commonwealth v.** ] **Barnett**, 50 A.3d [176, 197 (Pa. Super. 2012)] (quoting **Commonwealth v. Yasipour**, 957 A.2d 734, 743 (Pa. Super. 2008)). Because these constitutional provisions are coterminous, we need only review [the appellant's] claim under the Eighth Amendment. **Barnett**, 50 A.3d at 197 (citing **Commonwealth v. Parker**, 718 A.2d 1266, 1268 (Pa. Super. 1998) ("[Because] our analysis of this case under the United States Constitution is applicable to the state constitution, . . . we need not engage in a separate state constitutional review.")).

**Id.** (emphasis added).

Further, in ***Commonwealth v. Batts***, 66 A.3d 286 (Pa. 2013) (***Batts I***), our Supreme Court addressed the Eighth Amendment protections and a sentence of life without parole for a juvenile convicted of first-degree murder, and our Supreme Court concluded that the mandatory sentence of life without parole was unconstitutional. ***Batts I***, 66 A.3d at 294. The ***Batts I*** Court rejected the argument that Article I, Section 13 of the Pennsylvania Constitution required a complete ban on sentences of life without parole for juveniles. ***See id.*** at 299. The ***Batts I*** Court stated that "nothing in the arguments presented suggests that Pennsylvania's history favors a broader proportionality rule than what is required by the United States Supreme Court." ***Id.*** The ***Batts I*** Court then remanded for a new sentencing hearing pursuant to ***Miller v. Alabama***. ***See id.***

Subsequently, in ***Commonwealth v. Batts***, 163 A.3d 410 (Pa. 2017) (***Batts II***), our Supreme Court held that "in the absence of the sentencing court reaching a conclusion, supported by competent evidence, that the defendant will forever be incorrigible, without any hope for rehabilitation, a life-without-parole sentence imposed on a juvenile is illegal[.]" ***Batts II***, 163 A.3d at 435 (citations omitted). In other words, before a sentencing court may sentence a juvenile to a term of life without parole, the sentencing court was required to find that the juvenile offender was incapable of rehabilitation. ***See id.***

However, the requirements from ***Batts II*** were abrogated by the United States Supreme Court in ***Jones v. Mississippi***, 593 U.S. 98 (2021). In

*Jones*, the United States Supreme Court held that the sentencing court is not required to make a separate factual finding of permanent incorrigibility before imposing a sentence of life without parole on a juvenile offender. *Jones*, 593 U.S. at 113. Following the United States Supreme Court's decision in *Jones*, the Pennsylvania Supreme Court decided *Commonwealth v. Felder*, 269 A.3d 1232 (Pa. 2022). The *Felder* Court acknowledged that *Batts II* was abrogated by *Jones*. *Felder*, 269 A.3d at 1235. The *Felder* Court stated that when sentencing juvenile homicide offenders, "sentencing courts are required to consider only the relevant sentencing statutes, which will guarantee that the sentencer considers the juvenile's youth and attendant characteristics as required by *Miller*." *Id.* at 1246. "Moving forward, the authority of a sentencing court to impose a life-without-parole sentence on a juvenile homicide offender is circumscribed only to the extent set forth in 42 Pa.C.S. § 9721(b) and 18 Pa.C.S. § 1102.1, and by *Miller*'s command to 'consider the mitigating qualities of youth.'" *Id.* at 1245 (quoting *Miller*, 567 U.S. at 476).

> It logically and necessarily follows that if a discretionary sentencing scheme is constitutionally sufficient to permit the imposition of a life-without-parole sentence on a juvenile homicide offender, so too can a court impose a sentence that is something less than life without parole. This includes a term-of-years sentence that may amount to a *de facto* life sentence. Stated differently, as long as the sentence was the product of a discretionary sentencing system that included consideration of the juvenile's youth, the Eighth Amendment is satisfied.

*Id.* at 1245–46. Pursuant to ***Jones***, the ***Batts II*** requirements that "a juvenile homicide offender cannot constitutionally receive a sentence of life without parole unless he or she is proven to be permanently incorrigible" was dissolved. *Id.* at 1246.

Here, as the trial court noted, Appellant will be sixty-two years old when he is eligible for parole. ***See*** PCRA Ct. Op., 6/22/23, at 6. Therefore, Appellant's aggregate sentence of forty-five years to life does not constitute a *de facto* life sentence. ***See Commonwealth v. Lekka***, 210 A.3d 343, 357-58 (Pa. Super. 2019 (holding that a seventeen-year-old juvenile homicide defendant's sentence of forty-five years to life, making the defendant eligible for parole at age sixty-two, was not a *de facto* life sentence).

Further, the record reflects that Appellant received the constitutional protections required by the Eighth Amendment pursuant to ***Jones*** and ***Felder***. Specifically, Appellant's sentence of forty-five years to life was not a mandatory sentence and the trial court considered the applicable statutes,[6] the facts of the case, Appellant's young age, the gravity of the offense, the need to protect the public, and Appellant's rehabilitative needs, and it noted that it was not required to impose a sentence of life without parole and that it had the discretion to impose a lesser sentence in light of Appellant's youthful age at the time of his crimes. ***See Felder***, 269 A.3d at 1245-46; ***see also*** N.T., Sentencing Hr'g., 6/27/18, at 8; Pre-Sentencing Hr'g, 6/25/18, at 9-11

_____

[6] ***See*** 42 Pa.C.S. § 9721(b) and 18 Pa.C.S. § 1102.1.

- 13 -

(explaining the factors the trial court considers when imposing sentence); PCRA Ct. Op., 6/22/23, at 6-8 (citing Trial Ct. Op. 9/25/18, at 5-13). Accordingly, Appellant's sentence does not violate the Eighth Amendment. *See Jones*, 593 U.S. at 120; *Felder*, 269 A.3d at 1246.

Further, because Appellant's sentence does not violate the Eighth Amendment pursuant to *Jones* and *Felder*, and we are bound by precedent[7] to apply Article I, Section 13 of the Pennsylvania Constitution coextensively with the Eighth Amendment to the U.S. Constitution, Appellant is not entitled to relief on his argument that Article I, Section 13 of the Pennsylvania should be interpreted more broadly than the Eighth Amendment. *See Elia*, 83 A.3d at 267; *see also Commonwealth v. Street*, 2022 WL 2794345, at *3 n.7 (Pa. Super. filed Jul. 18, 2022) (unpublished mem.) (stating that the *Felder* Court expressly held that the requirements for imposing a sentence of life without parole on a juvenile offender from *Batts II* were dissolved and concluding that the dissolution extended "to constitutionality challenges under Article I, Section 13" of the Pennsylvania Constitution until "such time as our High Court indicates otherwise").[8] For these reasons, we conclude that Appellant is not entitled to relief.

_____

[7] *See, e.g., Commonwealth v. Crowley*, 605 A.2d 1256, 1257 (Pa. Super. 1992) (stating "precedent (*stare decisis*) requires [a three-judge panel of this Court] to adhere to a ruling of this Court until it is reversed either by our Supreme Court or an *en banc* panel of [the] Superior Court").

[8] *See* Pa.R.A.P. 126(b) (stating that we may cite to unpublished memoranda filed after May 1, 2019 for persuasive value).

- 14 -

On this record, we conclude that the PCRA court's order denying Appellant's PCRA petition is supported by the record and free of legal error. *See Sandusky*, 203 A.3d at 1043. Accordingly, we affirm the order denying Appellant's PCRA petition, although we do so on a different basis than the PCRA court. *See Pou*, 201 A.3d at 740 (affirming the order denying PCRA relief on a basis different from the PCRA court).

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2024