J-A27004-18

2019 PA Super 96

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOSEPH F. LIGON :
:
Appellant : No. 1845 EDA 2017

Appeal from the Judgment of Sentence May 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0311332-1953,
CP-51-CR-0311352-1953

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY BOWES, J.: **FILED MARCH 28, 2019**

Joseph F. Ligon appeals from the May 17, 2017 judgment of sentence of two concurrent terms of thirty-five years to life imprisonment that were imposed after he was resentenced on two 1953 convictions for first-degree murder.[1] We affirm.

The convictions arose out of events that occurred on February 20, 1953, when Appellant was 15 years old. Appellant and four others imbibed wine and, over the course of approximately two hours, proceeded to rob and stab eight people, killing Jackson Hamm and Charles Pitts. When Appellant was arrested that night, he was carrying a knife sheath on his person. A knife was recovered from the patrol car where Appellant had been sitting. Two of

---

[1] This Court does not quash the present appeal, despite Appellant's failure to file separate notices at each docket number, as this appeal was filed prior to the decision in **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018), which applies prospectively.

Appellant's co-defendants gave statements naming Appellant as the actor who stabbed all of the victims.

Appellant pled guilty to two counts of first-degree murder, and on December 18, 1953, the court imposed two concurrent mandatory terms of life imprisonment without the possibility of parole ("LWOP"). After the United States Supreme Court's decisions in **Miller v. Alabama**, 567 U.S. 460 (2012) and **Montgomery v. Louisiana**, ___ U.S. ___, 136 S. Ct. 718 (2016), Appellant received a resentencing hearing wherein he was ordered to serve two concurrent sentences of thirty-five years to life imprisonment. At the time of the resentencing, Appellant was eighty years old, having served over sixty-four years in prison. Credit for time served rendered Appellant immediately eligible for parole. Appellant filed post-sentence motions which were denied. He filed a timely notice of appeal and complied with the sentencing court's order directing him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The resentencing court filed its opinion, and the matter is ripe for our review.

Appellant raises the following issue on appeal: "Is it unconstitutional to impose a mandatory lifetime parole tail on all juvenile lifers being resentenced?" Appellant's brief at 3. When reviewing challenges to the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Brown**, 159 A.3d 531, 532 (Pa.Super. 2017) (citation omitted).

Appellant argues that the trial court's imposition of a mandatory life maximum sentence violates the **Miller** and **Montgomery** holdings, which invalidated the sentencing scheme that existed for juveniles convicted of first-degree murder prior to June 25, 2012, and require individualized sentences for juveniles. The Commonwealth agrees.

We first address Appellant's argument that **Miller** and **Montgomery** invalidated the applicable sentencing statutes, making his mandatory maximum sentence of life imprisonment illegal. At the time of Appellant's conviction, the then-applicable sentencing statute required that a person convicted of first degree murder receive a sentence of LWOP or the death penalty.[2] In **Miller**, the United States Supreme Court found that the imposition of a mandatory LWOP sentence, imposed upon a juvenile without consideration of the defendant's age and "the attendant characteristics of youth," violated the Eighth Amendment to the United States Constitution. The Supreme Court later declared **Miller** to be retroactive, requiring states to extend parole eligibility to juvenile offenders who committed their crimes pre-**Miller**. **Montgomery**, **supra** at 736.

---

[2] Appellant was originally sentenced under 18 P.S. § 4701, which was repealed and replaced by 18 Pa.C.S. § 1102 in 1972, after § 4701 was found to be unconstitutional on grounds unrelated to Appellant's conviction. **Commonwealth v. Bradley**, 295 A.2d 842 (Pa. 1972) (citing **Furman v. Georgia**, 408 U.S. 238 (1972)). Section 1102(a) required that a person convicted of first-degree murder receive a sentence of life or death. The parole code provided that a person sentenced to a term of life was not eligible for parole. 61 Pa.C.S. § 6137(a)(1).

- 3 -

The Pennsylvania Supreme Court interpreted *Miller* and found that, pursuant to *Commonwealth v. Batts*, 66 A.3d 286, 297 (Pa. 2013) (*Batts I*), once a sentencing court evaluates the criteria identified in *Miller* and determines a LWOP sentence is inappropriate, it must impose a "mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing." Our Supreme Court explained that § 1102 was still valid, since the unconstitutional part of Pennsylvania's sentencing scheme, the lack of parole eligibility pursuant to § 6137(a)(1), was severable. The *Batts I* court reasoned,

> *Miller* neither barred imposition of a [LWOP] sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile. Rather, *Miller* requires only that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of [LWOP] on a juvenile.

*Batts I*, *supra* at 295-96.

The interplay between § 1102(a) and § 6137(a)(1) was further examined by our Court in *Commonwealth v. Sesky*, 170 A.3d 1105 (Pa.Super. 2017). In *Sesky*, the defendant, like Appellant, was convicted of first-degree murder prior to June 25, 2012. However, Sesky was resentenced, after *Montgomery*, to thirteen to twenty-six years of imprisonment, instead of the mandatory maximum lifetime tail which Appellant received. The Commonwealth appealed, challenging the term-of-years tail, and argued that

the court should have imposed a mandatory maximum life sentence pursuant to § 1102(a)(1). Sesky, like Appellant, argued that **Miller** invalidated the entire sentencing scheme, so that the trial court was not required to impose any minimum or maximum term of imprisonment. Our Court agreed with the Commonwealth and vacated the judgment of sentence, and remanded for imposition of a sentence which included a mandatory maximum term of life imprisonment.

In reaching its conclusion, our Court relied on our Supreme Court's holding in **Commonwealth v. Batts**, 163 A.3d 410 (Pa. 2017) (**Batts II**), wherein the Court reaffirmed its **Batts I** holding, and again stated that the trial court must resentence defendants to either LWOP or a maximum term of life imprisonment as required by § 1102(a). **Seskey**, **supra** at 1109. In doing so, our Court reiterated **Batts II's** interpretation of the interplay between § 1102(a) and § 6137(a)(1):

> Despite the passage of four years since we issued our decision in **Batts I**, the General Assembly has not passed a statute addressing the sentencing of juveniles convicted of first-degree murder pre-**Miller**[3], nor has it amended the pertinent provisions that were severed in **Batts I**. As we have previously stated, the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute, and its failure to do so in

---

[3] The legislature eventually responded to **Miller** by enacting 18 Pa.C.S. § 1102.1, which provides that individuals between the ages of fifteen and seventeen convicted of first-degree murder must be sentenced to a maximum of life imprisonment and a minimum term set anywhere from thirty-five years to life. However, this statute only applies to those individuals sentenced after June 24, 2012.

- 5 -

the years following the **Batts I** decision gives rise to the presumption that the General Assembly is in agreement with our interpretation.

**Seskey**, **supra** at 1109, (citing **Batts II**, **supra** at 445) (internal quotation marks, citations, and footnote omitted).

Based on a review of the above-precedent and statutory authority, it is clear that Appellant's argument that "there is no relevant statute or appellate case law requiring the imposition of a lifetime parole tail," is incorrect. Appellant's brief at 10. Under **Batts II** and **Seskey**, the resentencing court was statutorily required to sentence Appellant to a maximum term of life imprisonment.

Appellant's second argument is that the imposition of a mandatory life tail is incompatible with **Miller's** individualized sentencing requirement because the parole board could choose to deny a rehabilitated inmate parole indefinitely. Appellant relies on **Songster v. Beard**, 201 F.Supp.3d 639 (E.D.Pa. 2016), to support his position that placing the authority to determine an individual's eligibility for release in the State Parole Board would be an abdication of the judicial responsibility of individualized sentencing mandated by **Miller**.

Importantly, the **Songster** decision has no precedential value in Pennsylvania. **Commonwealth v. Lambert**, 765 A.2d 306, 354-55 (Pa. 2000). Moreover, our Court has previously considered the argument that Appellant makes with **Songster** and found it to be "unavailing," as it does not

address **Graham v. Florida**, 560 U.S. 48, 75 (2010), a case which held that parole boards may make the ultimate determination whether an individual has demonstrated the requisite maturity and rehabilitation to deserve release. **See Commonwealth v. Olds**, 192 A.3d 1188, 1197 n.18 (Pa.Super. 2018). This lapse is especially concerning, as Appellant cites to **Graham** multiple times in his brief in support of his arguments, yet completely fails to address that his position is contrary to **Graham's** ultimate holding.

Further, Appellant's intimation that the Pennsylvania Board of Parole cannot be trusted to do its job in a fair and equitable fashion is without support in either **Miller** or **Montgomery**. The **Miller** Court did not call into question the ability of state parole boards to make the decision as to whether a juvenile murderer should be paroled and did not equate a sentence of LWOP with one for life with the possibility of parole. **Montgomery**, **supra** at 736. In fact, it did the opposite, merely requiring the states to make the relevant inmates parole eligible, thereby insuring that those prisoners who have shown the ability to reform will receive a meaningful opportunity for release. It did not hold that life sentences with parole eligibility are unconstitutional, or that juvenile murderers must be released at some point regardless of their fitness to rejoin society. Thus, a sentence with a term of years minimum and a maximum sentence of life does not violate **Miller's** individualized sentencing requirement, because it properly leaves the ultimate decision of when a defendant will be released to the parole board.

Appellant also fails to account for the fact that, if we adopt his argument, and allow him and others similarly-situated to receive a term-of-years maximum sentence, such a holding would lead to impermissibly disparate results. Section 1102.1 provides a clear expression of legislative intent as to juveniles that are convicted of first-degree murder post-*Miller*. Although, the statute itself does not apply to Appellant based upon the date of his conviction, it does apply to all similarly-situated defendants who were sentenced after its enactment. Mindful of the difference in treatment accorded to those subject to non-final judgments of sentence for murder as of *Miller's* issuance, and the enactment of § 1102.1, our Supreme Court has ordered trial courts to resentence juveniles to a maximum term of life imprisonment. *Batts II*, *supra*. We are bound to follow its mandate.

Appellant has received two concurrent sentences of thirty-five years to life, which rendered him immediately eligible for parole due to his sixty-four years of time credit. He has received the full benefit of *Miller* and its progeny.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/19

- 8 -