J. S29034/19

2019 PA Super 255

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
            v.             :
                                      :
JOSE E. HERNANDEZ,           :         No. 2210 EDA 2018
                                      :
           Appellant    :


Appeal from the Judgment of Sentence Entered June 27, 2018,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0603151-1988


BEFORE: BENDER, P.J.E., LAZARUS, J., AND FORD ELLIOTT, P.J.E.


OPINION BY FORD ELLIOTT, P.J.E.:        **FILED AUGUST 21, 2019**

Jose E. Hernandez appeals from the June 27, 2018 judgment of sentence of four concurrent terms of 45 years' to life imprisonment imposed after a jury found him guilty of four counts of first-degree murder and one count of possessing instruments of crime ("PIC").[1] After careful review, we affirm the judgment of sentence.

A prior panel of this court summarized the relevant facts of this case as follows:

> Appellant's[2] next door neighbor, Jerome Moses, testified that on March 14, 1988, he heard loud scuffling noises between 4:00 and 6:00 a.m. in the Hernandez apartment. As these noises continued, he heard Carmen Hernandez, appellant's stepmother,

---

[1] 18 Pa.C.S.A. §§ 2502(a) and 907(a), respectively.

[2] Appellant was 17 years old at the time of this incident.

say three times, "I love you." He then heard three or four popping noises that sounded like a cap gun. Subsequently, Mr. Moses did not hear any more voices, but he did hear dragging sounds and noises resembling objects being replaced. He then heard somebody leave the apartment. When he looked out of the window, he saw one man get into the Hernandez family van. Mr. Moses originally thought that the man was appellant's father, since the individual was wearing Mr. Hernandez's jacket and since only the father drove the van. Once he learned that the father was dead, the witness then concluded that the man must have been appellant.

During the next week, friends, neighbors, and relatives became concerned about the Hernandez family since they had not been seen and since both of their vehicles were not in their normal parking places. Telephone calls to the apartment were not answered. Meanwhile, appellant decided to stay at his girlfriend's house, and he told her mother that he was alone since his family suddenly left without telling him or taking him with them. However, the family had not told anyone about these travel plans. Appellant attended school regularly during the week, took his girlfriend on a shopping spree, and moved a VCR and other valuable items out of his family's apartment and into his girlfriend's house. His girlfriend commented on numerous deep scratches on appellant's chest[,] which he explained had been inflicted during a recent robbery.

Eventually, appellant was questioned in school by his parent[s'] friends and relatives concerning his family's whereabouts. He escorted them back to the apartment and allowed them to enter. When asked about blood stains on the sofa, appellant replied that the stains were Carmen's blood. When questioned about why the bathroom door was locked, the fan on, and a towel under the door, he had no explanation. Appellant fled when the bathroom door was broken down and the bodies of his father, stepmother, and two younger brothers were found in the bathtub. The bodies were encased in plastic bags and covered with

towels. It was determined that both parents had been shot in the back of the head, one brother had been asphyxiated with a plastic bag over his head, and another brother had his skull crushed.

Appellant fled Pennsylvania in his father's Honda. He reached Florida and then headed west through Tennessee. Tennessee State Troopers Richard Austin and Joel Deal observed appellant's Honda parked in a rest stop. Several hours later, the officers observed appellant's Honda parked in the same place at the rest stop. Trooper Austin watched appellant get out of his automobile, stretch, and put on a long coat. Since the weather was warm, Trooper Austin became suspicious. He ran a computer check on appellant's license plate number which revealed that appellant was wanted in Pennsylvania in connection with multiple homicides, that the occupant of the Honda matched the description of the suspect, and that appellant was presumed armed and dangerous. The troopers returned to the rest stop, surprised appellant in the restaurant, and arrested him.

The troopers then asked for appellant's license and identification. Police retrieved these items after appellant indicated that they were in his wallet in his back pocket. When the troopers requested the keys to the Honda, appellant indicated they were in his coat pocket. Trooper Deal reached in and took the keys and handed them to Trooper Austin. Trooper Austin inspected the car, unlocked it, and retrieved a letter sitting on the car seat in plain view. The letter was written by appellant, and in it, he informed his girlfriend that he had killed his family, was proud of it, and felt better. The troopers then locked the car, made arrangements to have it towed, read appellant his **Miranda**[3] rights, and transported him to the nearest police station.

At trial, appellant alleged that he killed his father in self-defense and that his father continually abused him. He claimed his father was angry that appellant's

_____

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 3 -

stepmother again became pregnant and that his father frequently threatened to leave her or to kill the whole family. In fact, appellant alleged that his father was jealous and suspected him of impregnating his stepmother. Appellant produced witnesses who substantiated that his father beat him, was having marital discord, and had been seen by one of them threatening appellant by putting a gun to his head. Appellant's specific defense to the charges of first[-]degree murder was that his father had returned home in a drunken rage and forced appellant to kill the others. His father then made him clean the apartment. Later, in the car, his father again threatened him, but appellant was able to shoot his father. Appellant argued that the evidence supported this version of events since the blood-stained seats in the car matched only his father's blood type. The Commonwealth refuted this evidence by proving that the barrel of the murder weapon contained only the blood type[,] which matched his stepmother, but not his father. Thus, appellant's stepmother[,] rather than his father[,] was the last one to be shot with that gun.

*Commonwealth v. Hernandez*, 590 A.2d 325, 326-328 (Pa.Super. 1991),

*appeal denied*, 600 A.2d 534 (Pa. 1991).

The sentencing court summarized the relevant procedural history of this

case as follows:

On January 25, 1990, after a jury trial before the Honorable Eugene H. Clarke, a jury convicted [appellant] of four counts of First-Degree Murder and [PIC]. On that same date, [the trial court] sentenced [appellant] to two consecutive and two concurrent terms of life imprisonment without the possibility of parole for the First-Degree Murder convictions, and a concurrent sentence of two and one-half to five years of imprisonment for PIC.

On June 25, 2012, the Supreme Court of the United States issued its holding in *Miller v. Alabama*, 567

U.S. 460 (2012), which rendered all mandatory life imprisonment without parole sentences for juveniles unconstitutional. On January 27, 2016, the Supreme Court of the United States issued its holding in ***Montgomery v. Louisiana***, --- U.S. ----, 136 S.Ct. 718 (2016), which held that the ***Miller*** decision applied retroactively.

In 2016, a three-judge ***en banc*** panel for the Philadelphia County Court of Common Pleas was established to decide all questions of law concerning the resentencing of juveniles previously sentenced to life without parole.[Footnote 2] On October 28, 2016, the ***en banc*** panel was presented with fifteen questions of law. On April 13, 2017, the ***en banc*** panel issued its opinion addressing each question of law.

> [Footnote 2] In 2016, the [Philadelphia County] Court of Common Pleas, adopted "General Court Regulation No. 1 of 2016." The Regulation established procedures for juvenile lifers previously sentenced to life without parole to have an opportunity to show that their crimes did not reflect irreparable corruption and that they should be considered for release on parole. For further discussion on what necessitated the regulation, ***see Miller v. Alabama***, [567 U.S. 460] (2012) and ***Montgomery v. Louisiana***, 136 S.Ct. 718 (2016).

[Appellant filed a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, on February 29, 2016.] On June 27, 2018, the [PCRA court] granted [appellant] post-conviction relief and vacated his January 25, 1990 sentence. On that same date [the trial court] imposed concurrent forty-five years to life sentences on each count of First-Degree Murder, and no further penalty on PIC. [Appellant] did not file a post-sentence motion.

> On July 27, 2018, [appellant] filed a timely Notice of Appeal. On July 30, 2018, [the trial court] ordered [appellant] to file a Concise Statement of [Errors] Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On August 3, 2018, [appellant] filed a timely 1925(b) Statement, and a motion for extension of time to file a supplemental Statement. On August 21, 2018, [the trial court] granted [appellant's] request. On September 14, 2018, [appellant] filed a timely supplemental Statement.

Trial court opinion, 9/25/18 at 1-2 (additional footnotes omitted).

On March 22, 2019, the Commonwealth filed a motion to stay the briefing schedule, based on the fact that it has taken the position in a case currently pending before our supreme court, ***Commonwealth v. Felder***, 2017 WL 6505643 (Pa.Super. 2017) (unpublished memorandum), ***appeal granted***, 187 A.3d 909 (Pa. June 19, 2018), "that a minimum sentence of over 40 years for a resentenced juvenile is a ***de facto*** life sentence, and so cannot be imposed unless the juvenile is proven to be incorrigible beyond a reasonable doubt." (Commonwealth's brief at 2.) On April 8, 2019, this court issued a ***per curiam*** order denying the Commonwealth's motion to stay the briefing schedule and permitting it to raise issues related to ***Felder*** in its brief.

On appeal, appellant raises the following issues for our review:

1. Was not the [sentencing] court's sentence of 45 years to life imprisonment a ***de facto*** life sentence requiring proof beyond a reasonable doubt that [appellant] was incapable of rehabilitation?

2. Did not the [sentencing] court err in sentencing [appellant] to a ***de facto*** sentence of life imprisonment without the possibility of parole

- 6 -

> where [appellant] has, in fact, been successfully rehabilitated over the course of his thirty years of imprisonment?
>
> 3.  Did not the [sentencing] court err in imposing a mandatory lifetime parole tail on [appellant] in violation of Amendment VIII of the United States Constitution?

Appellant's brief at 3.

In its brief to this court, the Commonwealth avers that the trial court did not find appellant to be "permanently incorrigible." (Commonwealth's brief at 9, referencing trial court opinion, 9/25/18 at 8.) The Commonwealth agrees with appellant "that a minimum sentence of 45 years is unconstitutional for a redeemable juvenile offender" and "his mandatory lifetime parole tail is unconstitutional." (*Id.*) In reaching these conclusions, the Commonwealth concedes that this court is bound by precedent,[4] but requests that we hold this matter in abeyance until the Supreme Court of Pennsylvania addresses the threshold *de facto* life sentence issue in *Felder*. (*Id.* at 9-10.) We decline to do so.

"It is axiomatic that this Court is bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court." *Commonwealth v. Martin*, 205 A.3d 1247, 1252 (Pa.Super. 2019). As

---

[4] Specifically, *Commonwealth v. Bebout*, 186 A.3d 462 (Pa.Super. 2018), and *Commonwealth v. Blount*, 207 A.3d 925 (Pa.Super. 2019), discussed *infra*.

discussed below, our decisions in **Bebout** and **Blount** are controlling in this matter and render appellant's claims meritless.

Appellant first contends that his aggregate judgment of sentence of 45 years to life imprisonment "constituted a **de facto** life sentence requiring that the Commonwealth establish beyond a reasonable doubt that [appellant] is incapable of rehabilitation." (Appellant's brief at 18.) In a related claim, appellant further avers that, "the Commonwealth failed to show that [he] was incapable of being rehabilitated as required to support a **de facto** life sentence because the record reflects that [appellant] has, in fact, been rehabilitated." (**Id.** at 28.)

Appellant's claims implicate the legality of his sentence. "[A] claim challenging a sentencing court's legal authority to impose a particular sentence presents a question of sentencing legality." **Commonwealth v. Batts**, 163 A.3d 410, 434-435 (Pa. 2017) (citations omitted). "The determination as to whether a trial court imposed an illegal sentence is a question of law; an appellate court's standard of review in cases dealing with questions of law is plenary." **Commonwealth v. Crosley**, 180 A.3d 761, 771 (Pa.Super. 2018) (citation omitted), **appeal denied**, 195 A.3d 166 (Pa. 2018).

Here, appellant's aggregate judgment of sentence of 45 years' to life imprisonment is consistent with this court's recent holding in **Bebout**, 186 A.3d 462. **Bebout** involved a 15-year-old defendant who was resentenced to

45 years' to life imprisonment for second-degree murder and related offenses, pursuant to *Miller* and *Montgomery*. *Bebout*, 186 A.3d at 468. The *Bebout* court concluded that "[t]he key factor in considering the upper limit of what constitutes a constitutional sentence," as opposed to a *de facto* sentence of life in prison without parole for a juvenile who was not deemed incapable of rehabilitation, is whether there is "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* (citation omitted). "To be meaningful or, at least, potentially meaningful, it must at least be plausible that one could survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits." *Id.* In reaching this conclusion, the *Bebout* court reasoned that although the 45-years-to-life sentence "falls between the 'clearly' constitutional and unconstitutional parameters suggested by the *Foust*[5] Court[,]" the defendant failed to show that a sentence which authorized his release at age 60 was the functional equivalent of a life-without-parole sentence. *Id.* at 467.

---

[5] *Commonwealth v. Foust*, 180 A.3d 416 (Pa.Super. 2018). In *Foust*, a panel of this court held that "a trial court may not impose a term-of-years sentence on a juvenile convicted of homicide if that term-of-years sentence equates to a *de facto* [life-without-parole] sentence unless it finds, beyond a reasonable doubt, that the juvenile is incapable of rehabilitation." *Id.* at 433. The *Foust* court determined that term-of-years sentence of 30 years' imprisonment did not constitute a *de facto* sentence of life without parole ["LWOP"]. *Id.* at 438. In reaching this conclusion, the *Foust* court explicitly "decline[d] to draw a bright line in this case delineating what constitutes a *de facto* LWOP sentence and what constitutes a constitutional term-of-years sentence[,]" and instead limited itself to the facts of the case before it. *Id.*

Likewise, in the instant matter, appellant has failed to demonstrate that he has no plausible chance of survival until his minimum release date. While appellant will not be eligible for parole until age 62, albeit two years longer than the defendant in **Bebout**, appellant has not shown any significant difference between the ages at the earliest possible point of release that would distinguish his case from **Bebout**. Accordingly, we decline to find that appellant's sentence constituted a **de facto** life sentence, necessitating a finding by the sentencing court that appellant is "incapable of rehabilitation." **See Foust**, 180 A.3d at 433.

Appellant next argues that the sentencing court illegally sentenced him to "a maximum sentence with a mandatory lifetime parole tail[,]" which he avers does not comport with the holdings in **Miller** and **Montgomery** that resentenced juveniles be given individualized sentences, and violates the prohibition against "cruel and unusual punishments" contained in the Eighth Amendment to the United States Constitution. (Appellant's brief at 33, 37.) In support of this contention, appellant avers that "there is no relevant statute or appellate case law requiring the imposition of a lifetime parole tail." (**Id.** at 33.) We disagree.

This issue was addressed by our supreme court in **Commonwealth v. Batts**, 163 A.3d 410 (Pa. 2017), and more recently by this court in **Foust** and **Blount**, which was decided April 8, 2019. Specifically, the **Blount** court stated as follows:

> For those defendants [convicted of first or second-degree murder prior to June 25, 2012,] for whom the sentencing court determines a [life without parole] sentence is inappropriate, it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102.1(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing[.]

***Blount***, 207 A.3d at ___, citing ***Commonwealth v. Seskey***, 170 A.3d 1105, 1108 (Pa.Super. 2017), quoting ***Batts***, 163 A.3d at 421 (brackets in original).

As noted by the ***Foust*** court, in light of our supreme court's decision in ***Batts***, "there was valid statutory authority to impose a maximum sentence of life imprisonment for [a] first-degree murder conviction." ***Foust***, 180 A.3d at 430. Contrary to appellant's contention, this court has explicitly held that such mandatory maximums do not violate the Eighth Amendment's ban on cruel and unusual punishment or the mandates of individualized sentencing. ***See Commonwealth v. Olds***, 192 A.3d 1188, 1197-1198 (Pa.Super. 2018) (holding that, the imposition of mandatory maximum sentence of life imprisonment for a juvenile defendant convicted of second-degree murder prior to ***Miller*** was constitutional and did not violate Eighth Amendment's ban on cruel and unusual punishment), ***appeal denied***, 199 A.3d 334 (Pa. 2018); ***Seskey***, 170 A.3d at 1107-1108 (holding that, the trial court was required to impose a mandatory maximum sentence of life imprisonment when it resentenced a juvenile defendant convicted of first-degree murder prior to ***Miller***). Accordingly, appellant's second claim fails.

For all the foregoing reasons, we affirm appellant's June 27, 2018 judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 8/21/2019*