J-S28034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                  :  PENNSYLVANIA
                                                  :

         v.                           :

MAURICE BAILEY                  :

           Appellant          :  No. 989 WDA 2022

Appeal from the PCRA Order Entered August 4, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0014654-1993

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED: September 6, 2023**

Appellant, Maurice Bailey, appeals *pro se* from the order entered in the Court of Common Pleas of Allegheny County, which denied his first timely petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46, without an evidentiary hearing.  After a careful review, we affirm the PCRA court's order in all respects except that we vacate and remand for a proper determination of credit for time served.

The relevant facts and procedural history are as follows: On September 24, 1994, a jury convicted Appellant of stabbing and beating his pregnant, fifteen-year-old girlfriend to death.  Appellant was also fifteen years old at the

---

[*] Former Justice specially assigned to the Superior Court.

time of the offense. The trial court has aptly summarized the evidence from the jury trial as follows:

[K.G.]…and [Appellant]…were involved in a romantic relationship. As a result of this relationship, [K.G.] became pregnant.

[K.G.] and [Appellant] agreed to meet on November 6, 1994, in the afternoon hours in the Elliott section of the City of Pittsburgh. The purpose of this meeting was to discuss [K.G.'s] pregnancy and how the couple were to respond to the situation.

[Appellant] and [K.G.] were initially seen talking in an area adjacent to the park. They were later seen walking into the park in that same area. The time that [Appellant] and [K.G.] were seen walking into the park was shortly before 3:00 [p.m.] on November 6, 1994.

At approximately 4:42 p.m., officers from the City of Pittsburgh received a report to respond to an area near this park by the Thaddeus Stevens School. The officers found the victim, [K.G.], lying in an alcove and covered with blood. The police discovered several footprints leading away from the scene of the victim in blood. Footprints were also visible on the victim's jeans and a wound was evident in her neck. It was ultimately determined that [K.G.] had received multiple stab wounds to the neck, one of which was fatal. Other physical evidence was also gathered at the scene by the City of Pittsburgh Police.

Investigation by the City of Pittsburgh Police led them to discover that [Appellant] was to meet with [K.G.] on the afternoon of her death. A description of the person accompanying the deceased as she entered the park fit [Appellant]. A search warrant was subsequently obtained, resulting in the discovery of clothing that had been worn by [Appellant] that appeared to contain blood. [Appellant] was arrested and admitted to having stabbed and killed [K.G.]. Physical evidence later confirmed that the blood found on [Appellant's] clothing was consistent with that of [K.G.] and inconsistent with that of [Appellant]. An examination of the deceased's body indicated that in addition to receiving ten superficial and one fatal stab wound, the deceased also had abrasions about her face and head.

Trial Court Opinion, filed 8/10/95, at 1-3.

The jury convicted Appellant on the sole count of first-degree murder, 18 Pa.C.S.A. § 2502(a), and on April 10, 1995, the trial court sentenced Appellant to life in prison without parole. This Court affirmed Appellant's judgment of sentence on May 17, 1996. *See Commonwealth v. Bailey*, 679 A.2d 842 (Pa.Super. 1996) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.

Thereafter, on July 9, 2012, Appellant filed a serial PCRA petition, in which he argued his sentence was illegal pursuant to the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012).[1] After filing several amended PCRA petitions, Appellant filed a motion for resentencing pursuant to *Montgomery v. Louisiana*, 577 U.S. 190, 136

---

[1] The *Miller* Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition of 'cruel and unusual punishments.'" *Miller*, 567 U.S. at 465. The Court also held that a trial court is not foreclosed from imposing a sentence of life imprisonment without parole on a juvenile; however, before doing so, the court is required to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

In response to *Miller*, in October of 2012, the Pennsylvania legislature enacted 18 Pa.C.S.A. § 1102.1. The statute provides that juvenile offenders convicted of first-degree or second-degree murder must receive a mandatory minimum sentence. *See* 18 Pa.C.S.A. § 1102.1(a), (c). However, the statute applies only to those "convicted after June 24, 2012." *Id.*

S.Ct. 718 (2016).[2]  On April 28, 2016, the Commonwealth filed an answer to Appellant's motion agreeing to resentencing.

On October 23, 2017, after a lengthy hearing, the trial court resentenced Appellant to thirty-five years to life in prison. Appellant did not file a post-sentence motion; however, he filed an appeal to this Court from his new judgment of sentence.  On appeal, Appellant challenged the discretionary aspects of his sentence.[3]  Concluding Appellant had waived his discretionary sentencing claims pursuant to Pa.R.Crim.P. 720(A)(1) by failing to file a post-sentence motion and/or raising the claims during the sentencing proceedings, this Court affirmed the October 23, 2017, judgment of sentence. ***See Commonwealth v. Bailey***, 219 A.3d 235 (Pa.Super. filed 6/14/19) (unpublished memorandum).  Appellant filed a petition for allowance of appeal, which our Supreme Court denied on December 23, 2019.  Appellant did not file a petition for a *writ of certiorari* with the United States Supreme Court.

On August 20, 2020, Appellant filed a timely, *pro se* PCRA petition, and on October 7, 2021, the PCRA court appointed counsel to represent Appellant.

_____

[2] **Montgomery** held that **Miller** constituted a new substantive rule that courts must apply retroactively to cases on collateral review.

[3] Specifically, Appellant contended his new sentence was unreasonable and excessive, the trial court failed to place sufficient reasons on the record to justify the sentence, the trial court did not consider his rehabilitative needs, and the trial court focused solely on the seriousness of the offense.

On November 9, 2021, counsel filed a petition to withdraw as counsel, along with a **Turner/Finley**[4] "no-merit letter." On June 24, 2022, the PCRA court entered an order granting counsel's petition to withdraw as counsel, as well as providing Appellant with notice of its intention to dismiss the PCRA petition without an evidentiary hearing pursuant to Pa.R.Crim.P. 907. Appellant did not file a response to the PCRA court's notice. By order filed on August 4, 2022, the PCRA court denied Appellant's PCRA petition.

This timely, *pro se* appeal followed. The PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the PCRA court filed a Rule 1925(a) opinion on January 18, 2023.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Presented" (verbatim):

> I.      Did the trial court err when it admitted Commonwealth's evidence on Appellant's Nation of Islam (NOI) religious beliefs at 10/23/2017 resentencing hearing?
>
> II.     Did the trial court err when it considered Commonwealth's evidence on Appellant's Nation of Islam (NOI) religious belief against Appellant's request for 25-year minimum sentence?
>
> III.    Did Commonwealth violated [*sic*] Appellant's [*sic*] process rights when it suppressed Brady material?
>
> IV.     Did Commonwealth violated [*sic*] Appellant's [*sic*] process rights when it presented Napue evidence at 10/23/2017 resentencing hearing?

---

[4] **See Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). Counsel certified that, on November 9, 2021, he sent to Appellant via first-class mail a copy of the petition to withdraw and no-merit letter.

V. Did the trial court err in its breakdown in the judicial process when Appellant received 6/24/2022 notice of intention to dismiss on 7/18/22 4 days after the 20-day response deadline?[5]

VI. Did the trial court err [*sic*] it's [*sic*] miscalculation of Appellant's time credit after it ruled Appellant was entitled to any time served for this case at 10/23/2017 resentencing hearing?

Appellant's Brief at 8 (unnecessary capitalization and suggested answers omitted) (footnote added).[6]

Preliminarily, we note that our standard of review for an order denying PCRA relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. **Commonwealth v. Sattazahn**, 597 Pa. 648, 952 A.2d 640, 652 (2008). "We must accord great deference to the findings of the PCRA court, and such findings will not be disturbed unless they have no support in the record." **Commonwealth v. Scassera**, 965 A.2d 247, 249 (Pa.Super. 2009) (citation omitted).

---

[5] Appellant suggests in his "Statement of Questions Presented" that he received the PCRA court's Pa.R.Crim.P. 907 notice of its intention to dismiss on "July 18, 2022, 4 days after the 20-day response deadline[.]" Appellant's Brief at 8. However, in the argument portion of his brief, as discussed *infra*, Appellant admits the prison mail scanning system reveals he received the notice on July 11, 2022, which was prior to the 20-day deadline. **See** Appellant's Brief at 26.

[6] We have renumbered Appellant's issues for the ease of discussion.

In his first and second issues, Appellant claims that, in resentencing Appellant on October 23, 2017, the trial court violated his due process rights by admitting a document into evidence, which allegedly detailed Appellant's beliefs and practices in the Nation of Islam religion.[7] Further, Appellant contends the trial court erred in considering the evidence of Appellant's religious beliefs in resentencing Appellant.

Initially, we note that, aside from bald assertions of error, Appellant has not developed these issues in his brief. That is, aside from alleging a certain document was entered into evidence, and the trial court allegedly considered the document, Appellant has not developed the issues on appeal. Notably, he has cited no relevant authority in support of his issues. *See* Pa.R.A.P. 2119.

Further, to the extent these issues relate to the trial court's admission of evidence during the resentencing hearing[8] and/or a discretionary aspect of

---

[7] Appellant specifically challenges the admission of Commonwealth Exhibit 4, which was a document from the Pennsylvania Department of Corrections outlining the fact Appellant was a security threat due to Appellant's self-admitted gang-related activity. As the PCRA court noted, Appellant was "investigated [for being] the leader of a new security threat group at SCI-Pittsburgh known as the original men of honor. Men of honor were having conflicts with white supremacists [at] SCI-Pittsburgh." PCRA Court Opinion, filed 1/18/23, at 5.

[8] "During a sentencing proceeding, due process allows a court to consider any information, even if it would not be admissible under the evidentiary rules, provided that the evidence has sufficient *indicia* of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." *Commonwealth v. Eldred*, 207 A.3d 404, 408
*(Footnote Continued Next Page)*

Appellant's new sentence, the issues are waived since Appellant could have raised the issues previously.[9]  **See** 42 Pa.C.S.A. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

Moreover, to the extent Appellant suggests that, upon resentencing him, the trial court was "vindictive" towards Appellant's religious beliefs and had no authority to impose a harsh sentence to "punish" Appellant for his religious beliefs in violation of his constitutional rights, assuming, *arguendo*, this presents a legality of sentencing claim,[10] we find no merit.  **See Commonwealth v. Prinkey**, ___ Pa. __, 277 A.3d 554 (2022) (holding that, where sentencing court's authority to act has been infringed upon, the sentence is illegal for issue preservation purposes, and legality of sentencing claims are cognizable under the PCRA).

---

(Pa.Super. 2019) (citations omitted) (quotation marks and quotation omitted). This Court has recognized that, since due process applies, "a defendant has [the] right to dispute evidence at sentencing." **Id.**

[9] Appellant has not presented this issue in terms of ineffective assistance of counsel.

[10] We note that issues relating to the legality of a sentence are questions of law.  **See Prinkey**, **supra**.  Our standard of review over questions involving the legality of a sentence is *de novo*, and the scope of review is plenary. **Id.**

In addressing this issue, the PCRA judge, who also was the resentencing judge, specifically indicated: "[Appellant's] religious beliefs and practices in the Nation of Islam were not discussed or reviewed at the [sentencing] hearing. The Court did not consider [Appellant's] religious beliefs in sentencing [Appellant]." PCRA Court Opinion, filed 1/18/23, at 5.

After reviewing the record, we find no error. *See Prinkey*, *supra* (setting forth the scope and standard of review for legality of sentencing claims). Simply put, aside from Appellant's bald assertion that the PCRA court was "vindictive" towards Appellant's religion and illegally imposed a harsh sentence to punish him for his religious beliefs without the authority to do so, there is no evidence supporting his assertion. In fact, the PCRA judge, who resentenced Appellant, specifically indicated he did not consider Appellant's religious beliefs in imposing sentence. Thus, Appellant is not entitled to relief on his first or second issues.

In his third issue, Appellant contends the Commonwealth committed a *Brady*[11] violation by failing to turn over Appellant's prison records prior to the resentencing hearing on October 23, 2017. Appellant contends the

---

[11] *See Brady v. Maryland*, 373 U.S. 83, 831194 (1963). "Under *Brady*, the prosecution must turn over evidence within its possession that is exculpatory to either the guilt or the punishment of the defendant." *Commonwealth v. Morales*, 549 Pa. 400, 701 A.2d 516, 522 (1997) (citations omitted).

Commonwealth gained an "unfair advantage" by using his prison records without releasing them to Appellant prior to the resentencing hearing.[12]

Initially, we note Appellant has not developed this issue in his brief. Notably, aside from citing generally to **Brady**, he has cited no relevant authority in support of his issue. **See** Pa.R.A.P. 2119.

Further, the record is clear Appellant could have raised this issue previously. Thus, it is waived on this basis. **See** 42 Pa.C.S.A. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."); **Commonwealth v. Roney**, 622 Pa. 1, 79 A.3d 595 (2013) (holding **Brady** issue is waived for PCRA purposes if the issue could have been raised previously on direct appeal but the petitioner failed to do so).

In his fourth issue, Appellant contends the prosecutor violated the dictates of **Napue v. Illinois**, 360 U.S. 264, 79 S.Ct. 1173 (1959),[13] by eliciting false testimony from Pennsylvania Department of Corrections Agent

_____

[12] Appellant has not asserted an ineffective assistance of counsel claim in connection with his alleged **Brady** violation.

[13] In **Napue**, the witness, who had been serving a 199-year sentence for the same murder for which the petitioner had been on trial, falsely testified that the prosecutor did not offer the witness a reduction in sentence in exchange for the witness' testimony. **Napue**, 360 U.S. at 265. There, the United States Supreme Court determined that the failure of a prosecutor to correct the testimony of the witness, which he knew to be false, denied the petitioner due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. **Id.** at 265, 271.

Michael Glenn[14] during the October 23, 2017, resentencing hearing. Appellant contends Agent Glenn gave false testimony indicating Appellant was a member of a gang, which is known as the original men of honor, and the Commonwealth knew the testimony was false. Appellant contends that, since the Commonwealth did not "correct" Agent Glenn's false testimony during the resentencing hearing, the Commonwealth violated his due process rights.[15]

We dispose of Appellant's claim by noting Appellant could have raised the claim previously. Thus, it is waived on this basis.[16] **See** 42 Pa.C.S.A. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

In his fifth issue, Appellant contends that, although the PCRA court filed its Pa.R.Crim.P 907 notice of its intention to dismiss on June 24, 2022, the prison mail system reveals Appellant did not receive the notice until July 11, 2022, which was just four days prior to the twenty-day deadline. **See** Appellant's Brief at 26 (prison system "scanned Appellant's non privileged

_____

[14] Agent Glenn explained he works in the Pennsylvania Department of Corrections Special Investigations and Intelligence Division.

[15] Appellant presented no ineffective assistance of counsel claim in connection with his **Napue** challenge.

[16] In any event, contrary to Appellant's bald assertion, as the PCRA court indicated, there is no evidence Agent Glenn presented false testimony during the resentencing hearing, and his testimony was consistent with prison records. PCRA Court Opinion, filed 1/18/23, at 5-6.

- 11 -

mail, tracked Notice's arrival on 7/11/2022, at 5:33 a.m."). Appellant contends this constituted a breakdown in the PCRA court's operations.

Assuming, *arguendo*, Appellant is correct, we conclude Appellant has not demonstrated he was prejudiced. Contrary to Appellant's assertion in his brief, the docket entries and record reveal Appellant took no action, including responding or seeking an extension of time to respond after he received the notice. Moreover, the PCRA court did not dismiss Appellant's PCRA petition until August 4, 2022, more than twenty days after Appellant received the Rule 907 notice. **See Commonwealth v. Vo**, 235 A.3d 365, 372 (Pa.Super. 2020) (indicating "service of any notice of dismissal, whether in the form of a Rule 907 notice by the court, or a **Turner**/**Finley** no-merit letter, must occur at least twenty days prior to an official dismissal order") (quotation marks and quotation omitted)). Further, Appellant has not indicated what issues or argument he desired to present in response to the Rule 907 notice. Thus, we conclude Appellant is not entitled to relief on this claim.

In his final issue, Appellant claims that, upon resentencing him on October 23, 2017, the trial court erred in failing to award him full credit for all time served. Pointing to the written sentencing order, he specifically notes the trial court erred in failing to award credit for time served from the date of Appellant's arrest (November 7, 1993) to March 16, 1994 (the date which the trial court set as the commencement for credit for time served).

"[A] challenge to the trial court's failure to award credit for time spent in custody prior to sentencing involves the legality of sentence and is cognizable under the PCRA." **Commonwealth v. Menezes**, 871 A.2d 204, 207 (Pa.Super. 2005) (citation omitted). Our standard of review over such questions is *de novo*, and the scope of review is plenary. **Id.**

Section 9760 of the Sentencing Code, governing how a trial court applies credit for time served, states, in pertinent part:

Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S.A. § 9760(1). "The principle underlying Section 9760 is that a defendant should be given credit for time spent in custody prior to sentencing for a particular offense."[17] **Commonwealth v. Fowler**, 930 A.2d 586, 595 (Pa.Super. 2007) (citation omitted).

Here, at the conclusion of the resentencing hearing on October 23, 2017, the trial court verbally directed that Appellant "shall receive credit for any time served attributable to this case." N.T., 10/23/17, at 172. Nevertheless, in its written sentencing order, the trial court set forth specific

---

[17] The dictates of Section 9760 apply to resentencing cases as well. **See Commonwealth v. Ligon**, 206 A.3d 1196 (Pa.Super. 2019) (recognizing that when a defendant is resentenced pursuant to **Montgomery** the defendant is entitled to credit for time served).

time periods for which Appellant would solely receive credit for time served. Specifically, the trial court indicated Appellant would receive credit from 3/16/94 to 4/11/95 (392 days), as well as from 4/10/95 to 10/23/17 (8233 days). Trial Court Order, filed 10/23/17.

Appellant contends the trial court erred in failing to award him credit for time served from November 7, 1993, when he was arrested, to March 16, 1994, the date upon which the sentencing order indicated the award of credit for time served commenced.[18]

We agree with Appellant that there are irregularities with the trial court's October 23, 2017, sentencing order regarding Appellant's entitlement to credit for time served. As Appellant avers, the certified record reveals he was arrested on November 7, 1993, and the sentencing order does not provide credit for time served from November 7, 1993, to March 16, 1994.[19]

_____

[18] In Pennsylvania, the text of the sentencing order, and not the statements a trial court makes about a defendant's sentence, is determinative of the court's sentencing intentions and the sentence imposed. **See Commonwealth v. Green**, 335 A.2d 392, 392 (Pa.Super. 1975) (*en banc*). Our Supreme Court has held that the "signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence." **Commonwealth v. Isabell**, 503 Pa. 2, 12, 467 A.2d 1287, 1292 (1983) (internal quotation marks and citations omitted).

In the case *sub judice*, the Commonwealth recognizes the written sentencing order controls and concedes there are inaccuracies in the sentencing order.

[19] We note the record does not definitively reveal whether Appellant was in custody during this time; however, as discussed *infra*, bail was set on March

*(Footnote Continued Next Page)*

- 14 -

However, the certified record further reveals that bail was set in this matter on March 25, 1994, and on that same date, Appellant, through a third-party bondsman, posted $40,000.00 for bail. There is no indication from the record that Appellant's bail was revoked prior to his conviction (September 24, 1994) or original sentencing (April 10, 1995).[20] Consequently, we question whether the trial court properly awarded credit for time served from March 25, 1994 (bail posted) to April 10, 1995 (original sentencing). Additionally, we note the trial court indicated in its October 23, 2017, order that the "start date" for the computation of credit for time served is March 16, 1994; however, there is nothing in the certified record that suggests Appellant's custody began on March 16, 1994, for purposes of applying Section 9760.

Based on the aforementioned, to ensure that Appellant receives the proper credit to which he is entitled, we vacate that portion of the PCRA court's order denying Appellant's claim pertaining to credit for time served in connection with this matter and remand for the trial court to determine properly Appellant's credit for time served. We affirm the PCRA court order denying Appellant relief in all other respects.

_____

25, 1994, which suggests Appellant was in custody during some or all of the time period after his November 7, 1993, arrest.

[20] We are unable to determine from the record whether Appellant was taken back into custody after the jury's verdict, at the time of sentencing, or some other time.

Order affirmed, in part. Order vacated and remanded, in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2023